IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NICOLE T. JENKINS, | ) |
| Plaintiff, | ) |
| | ) JURY DEMAND |
| v. | ) |
| | ) Civil Action No. _____ |
| THE VANDERBILT UNIVERSITY, | ) |
| Defendant. | ) |

**COMPLAINT**

### I. INTRODUCTION

1. This action is brought by the Plaintiff against the Defendant alleging that Defendant violated Plaintiff's rights by discriminating against Plaintiff in her employment because of her sex and race. Plaintiff demands a jury trial as to all issues of fact raised by the pleadings.

### II. JURISDICTION AND VENUE

2. This action seeks compensatory and punitive damages, costs, injunctive relief, and attorneys' fees for the unlawful discrimination based upon sex and race suffered by the Plaintiff.

3. This action arises under Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. §2000e *et seq.* (as amended), 42 U.S.C. §2000e-2 (as amended) and the Civil Rights Act of 1991, 42 U.S.C. §1981a.

f:\clients\jenkins, nicole\pleadings\jenkins\complaint.doc
4/10/2012 10:05 AM
Case 3:12-cv-00369   Document 1   Filed 04/10/12   Page 1 of 13 PageID #: 1

4.  Jurisdiction over the federal claim set forth in this Complaint is invoked pursuant to 42 U.S.C. §2000e (as amended), 42 U.S.C. §1981a, 42 U.S.C. §1988, 28 U.S.C. §1343, and 28 U.S.C. §1331. Jurisdiction over the state claims is invoked pursuant to this Court's supplemental jurisdiction as provided in 28 U.S.C. §1367.

5.  Within 300 days of Plaintiff's receipt of notice of and within 300 days of the adverse action taken against Plaintiff by Defendant, Plaintiff filed charges of employment discrimination with the Equal Employment Opportunity Commission. The Plaintiff received a Notice of Right to Sue and filed this Complaint within 90 days of receiving her Notice of Right to Sue.

6.  Compensatory and punitive damages are sought pursuant to 42 U.S.C. §2000e *et seq.* (as amended), and the Civil Rights Act of 1991, 42 U.S.C. §1981a.

7.  Costs and attorneys fees are sought pursuant to 42 U.S.C. §2000e *et seq.* (as amended), and the Civil Rights Act of 1991, 42 U.S.C. §1981a *et seq.* and 42 U.S.C. §1988.

8.  Venue for this action properly lies in the United States District Court for the Middle District of Tennessee at Nashville pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1391 because the events giving rise to these claims occurred in this Judicial District. Further, Defendant can be found and transacts business in this Judicial District.

### III. PARTIES

9.  Plaintiff, Nicole T. Jenkins, is an African-American adult, female citizen of the United States residing in Brentwood, Tennessee. Plaintiff is currently employed by the Defendant as an Associate Professor in its Owen Graduate School of Management and has been so employed since 2007.

f:\clients\jenkins, nicole\pleadings\jenkins\complaint.doc
4/10/2012 10:05 AM

**10.** Defendant, The Vanderbilt University ("Vanderbilt"), is a private nonprofit corporation organized and existing under the laws of the state of Tennessee with its principal place of business in Nashville, Tennessee. Defendant is engaged in a wide range of educational activities including the ownership of the Vanderbilt University Medical Center, which operates in conjunction with the Vanderbilt University Medical School.

## IV. FIRST CLAIM FOR RELIEF - CIVIL RIGHT ACTS OF 1964 AND 1991

**11.** Defendant, through its various officers, administrators and agents, engaged in unlawful practices and policies in violation of 42 U.S.C. §2000e *et seq.* by intentionally and willfully discriminating against the Plaintiff in her employment because of her sex and race from at least as early as January 1, 2008 to the date of filing of this Complaint. Defendant employs more than 500 persons.

**12.** In 2007, Plaintiff accepted Defendant's offer of a facultyposition as an Associate Professor at the Owen Graduate School of Management ("Owen"). It was agreed she would be considered for tenure in the fall of 2011 based upon scholarship and teaching.

**13.** While a PhD. Student at Iowa, a faculty member at Washington University in St. Louis and an instructor for KPMG, Plaintiff received more than acceptable teaching evaluations. After coming to Vanderbilt, the quality of Plaintiff's teaching evaluations never reached the level of being consistently "good" as judged by the mean scores in Owen. On an annual basis, the feedback Plaintiff received from the Dean's office was that her student evaluations needed to improve. The directive Plaintiff received from Richard Willis, chair of her third year review committee, was that the students hated Plaintiff and that regardless of her research record, if Plaintiff did not improve her teaching evaluations Plaintiff would never be tenured.

14. Following Plaintiff's first year of teaching at Owen, and even more so in response to Plaintiff's third year review, Plaintiff spent extraordinary amounts of time attempting to improve her teaching evaluations. Below is a sample of some actions Plaintiff took that were above and beyond what Plaintiff would have done ordinarily:

   (a) attended lectures and workshops at the Center for Teaching ("CFT");

   (b) met with consultant in the CFT to review syllabi and student evaluations;

   (c) had the CFT consultant sit in on Plaintiff's classes and participated in debriefing meetings at the CFT;

   (d) met with other faculty in Owen and across campus to discuss teaching strategies;

   (e) completely reworked each class annually, including changes to the book, format, rigor, etc.;

   (f) hired an editor teaching assistant to read and edit all of Plaintiff's PowerPoint slides; and

   (g) held extra class sessions on Friday to review the week's work and to prepare for upcoming exams.

15. Plaintiff put a great deal of effort into improving her courses; however, the return from Plaintiff's investment was not reflected in her student evaluations. Plaintiff has investigated and implemented various proven strategies to make the courses she taught and herself, more acceptable to the students. Plaintiff has evaluated suggestions from students, the CFT, colleagues at other schools, etc. However, despite the investment, little seemed to have changed.

16. In the fall of 2011, Plaintiff discussed her teaching evaluations with two of Defendant's administrators. Both inquired about the inherent bias that exists for faculty who are in

f:\clients\jenkins, nicole\pleadings\jenkins\complaint.doc
4/10/2012 10:05 AM

Case 3:12-cv-00369   Document 1   Filed 04/10/12   Page 4 of 13 PageID #: 4

the confluence demographic of being female and a person of color. Specifically, each stated that it is widely known that African-American women receive lower student evaluations on the Vanderbilt campus. This is particularly true when the faculty member is teaching courses where her social identity does not align with the course being taught — *i.e.*, teaching race or gender based classes. Students question the professor's expertise and issue statistically lower evaluations of the instructor. Plaintiff teaches graduate courses unrelated to race and gender to a population of primarily white men.

17. Plaintiff has found the written evaluations of her students and the statements made in her third year review that she does not demonstrate mastery of the material she teaches to be perplexing. Plaintiff has more practical work experience than her accounting colleagues combined, Plaintiff has remained active in the accounting profession and is annually invited to instruct concerning new complex accounting regulations for KPMG where she received extremely high evaluations.

18. Plaintiff has been evaluated over the past five years on a metric that is known by the Defendant to be inherently biased and was told that tenure was not obtainable unless Plaintiff improved on this metric. As a result, the tenured faculty at Owen has judged Plaintiff's record, in terms of teaching, to be insufficient to warrant tenure.

19. Over the five years that Plaintiff has been a faculty member, the only mentoring or direction that she has received from the faculty and Dean's office of the Defendant has come in the form of her annual reviews with the Associate Dean. At no time has any member of the faculty or Plaintiff's colleagues in accounting ever provided her with any direction on any pertinent matters related to research, teaching or service.

- 5 -

f:\clients\jenkins, nicole\pleadings\jenkins\complaint.doc
4/10/2012 10:05 AM

Case 3:12-cv-00369   Document 1   Filed 04/10/12   Page 5 of 13 PageID #: 5

20.     In November, 2010, Plaintiff met with Ray Friedman, the Associate Dean of Faculty and Research at the Owen Graduate School of Management and Paul Chaney, Area Coordinator of Accounting. This was a follow-up meeting to an earlier meeting Plaintiff had with Associate Dean Friedman when he was initially appointed as Associate Dean earlier that fall. In the November meeting, Professor Freidman informed Plaintiff that the likelihood of her getting tenure was "far south of 50 percent". When Plaintiff inquired as to the basis for his opinion, Associate Dean Friedman indicated that it was based on what he had "heard in the hallway". At that time Associate Dean Friedman was unfamiliar with Plaintiff's research record and the ranking of journals in her field. In addition, Associate Dean Friedman stated that he hoped Plaintiff was exploring other career options. It was clear from the tenor of the meeting that Associate Dean Friedman had determined nearly one year in advance of Plaintiff's tenure process that Plaintiff was not going to be tenured at Vanderbilt. At this meeting it was agreed that the accounting group would meet with Plaintiff in August, 2011 to provide Plaintiff with an evaluation of her record. This meeting never took place.

21.     Associate Dean Friedman instructed Plaintiff to invite all of the faculty members from the accounting group to sit in on Plaintiff's classes during MODs 3 and 4 of 2011. Plaintiff extended this invitation to the faculty during both MODs. During Plaintiff's annual review in June, 2011, Plaintiff asked Associate Dean Friedman how the faculty's opinions of Plaintiff's teaching were to be documented for Plaintiff's tenure file and was informed that these opinions did not matter and that no documentation was to be included.

22.     While at Vanderbilt, Plaintiff has had four preps, twice as many as any of the in-load teaching of the tenured, research active accounting faculty. This is relative to Plaintiff's peer in finance who has had one prep. A similar lopsided comparison exists when Plaintiff's teaching load

f:\clients\jenkins, nicole\pleadings\jenkins\complaint.doc
4/10/2012 10:05 AM

Case 3:12-cv-00369   Document 1   Filed 04/10/12   Page 6 of 13 PageID #: 6

is compared with most other untenured faculty in Owen. In the previous year when Plaintiff's teaching load was scheduled to go up to five, Plaintiff's accounting colleagues and the Senior Associate Dean suggested that Plaintiff add a new prep to her teaching load in the third MOD.

23. In June, 2011 Plaintiff advised Jim Bradford, Dean of Owen that Paul Chaney could not be an impartial chair for her tenure committee. The Dean and Plaintiff agreed to then add a senior finance faculty member to the committee. In August, 2011, Associate Dean Friedman contacted Plaintiff and stated that he had informed Paul Chaney that Plaintiff had a problem with him being Plaintiff's chair and that he was being removed from Plaintiff's committee. Associate Dean Friedman also removed the other two committee members. He then appointed Debra Jeter as the new chair. Debra Jeter is Paul Chaney's former Ph.D student and they have co-authored a textbook and several research papers together.

24. Also in the June, 2011 meeting with Associate Dean Friedman, Plaintiff was given a list of the documents needed for her tenure packet (statements on research, teaching and service, curriculum vita and names of six external reviewers). During the course of the summer at no time did Plaintiff's tenure committee chair or members communicate with the Plaintiff. The original list of documents that Plaintiff received from Associate Dean Friedman was incomplete and Plaintiff supplemented it based on her discussions with a colleague who was also up for tenure this year. The colleague's committee chair provided him with clear direction on which documents to include, the content and format. Moreover, the senior faculty in this colleague's area provided him with an opinion of his record and guidance on how to strengthen his tenure case. The only interaction Plaintiff had with her committee and chair was subsequent to the September 1, 2011 submission deadline of her packet when additional documentation was requested.

f:\clients\jenkins, nicole\pleadings\jenkins\complaint.doc
4/10/2012 10:05 AM

25. On November 16, 2011, Plaintiff met with Provost Richard McCarty. During the course of that meeting, Plaintiff relayed to Provost McCarty the unusual occurrences surrounding her tenure process. Provost McCarty asked Plaintiff if she thought her low evaluations had anything to do with the fact that Plaintiff is an African-American woman. He went on to say that in reality we have not come as far as we would like and that Vanderbilt, being located in the south, still has a long way to go. He then relayed an incident when he was Dean of Arts and Sciences about a gay Caucasian female faculty member who had lower than average teaching evaluations and how he had to frame her teaching evaluations in his recommendation to the Promotion and Tenure Review Committee ("PTRC") when she went up for tenure. Plaintiff stated that she had invested significantly in her teaching to the detriment of her research in trying to improve her teaching evaluations.

26. Toward the close of the meeting, Provost McCarty asked Plaintiff to arrange a meeting with Tim McNamara, the Associate Provost, to relay the events to him. On November 28, 2011, Plaintiff met with Associate Provost McNamara and fully advised him of the facts set forth in Paragraphs 13-25 of this Complaint. He agreed that there were some very unusual occurrences with regard to Plaintiff's tenure process, but expressed an opinion that there did not appear to be a violation of Vanderbilt's policies and procedures for tenure. During that meeting, Associate Provost McNamara concurred with Provost McCarty that race and gender play adverse roles in teaching evaluations at Defendant. At the close of the meeting, Associate Provost McNamara asked for permission to speak with Professor Friedman, the Associate Dean of Faculty and Research at Owen, which Plaintiff granted.

27. On December 19, 2011, Plaintiff met with Dean Bradford and Associate Dean Friedman regarding the outcome of the faculty's December 16, 2011 tenure vote. Plaintiff was

- 8 -

f:\clients\jenkins, nicole\pleadings\jenkins\complaint.doc
4/10/2012 10:05 AM

Case 3:12-cv-00369   Document 1   Filed 04/10/12   Page 8 of 13 PageID #: 8

informed at that time that the faculty did not support her tenure case and that Plaintiff had the option of writing a letter to the Dean in support of her tenure case. It was determined that Plaintiff would submit this letter by January 2, 2012. Plaintiff submitted that letter to the Dean on that date. The following day, Plaintiff received a letter from the Dean stating that he concurred with the decision of the faculty and that he had forwarded Plaintiff's letter to the Equal Opportunity, Affirmative Action and Disability Services offices ("EAD").

28. On information and belief, Plaintiff's tenure committee stated that Plaintiff's research record did not need to be discussed because Plaintiff did not meet the minimum standard for teaching effectiveness to warrant tenure. Other faculty members present allegedly took issue with this opinion and believed that the external letters opining on Plaintiff's research record were good enough to support Plaintiff for tenure. The student teaching evaluations played a crucial role in the final decision not to support Plaintiff for tenure.

29. Defendant utilized standardized student questionnaires designed primarily by Caucasian men. There are academic studies which find that such standardized questionnaires inevitably penalize African-American women for departing from the norm. That Defendant relied upon such discriminatorily flawed data and did not conduct any peer reviews of the Plaintiff to test the accuracy of such evaluations demonstrates that Plaintiff was the victim of discrimination by the Defendant.

30. At no time during Plaintiff's years of teaching did the Defendant document any peer review of Plaintiff's teaching. Such documented reviews would have provided some basis for objective analysis of the student evaluations of Plaintiff's teaching.

31. Student evaluations of a professor who is an African-American woman teaching accounting as was Plaintiff must inevitably be subject to bias. Plaintiff is the only

- 9 -

f:\clients\jenkins, nicole\pleadings\jenkins\complaint.doc
4/10/2012 10:05 AM

Case 3:12-cv-00369   Document 1   Filed 04/10/12   Page 9 of 13 PageID #: 9

African-American female faculty member in Defendant's Owen Graduate School of Management. There are a substantial number of studies and literature which support the conclusion that race and gender bias are built into student evaluations. Student evaluations of African-American female professors tend to discriminate against female professors who appear to depart from the norm. That the Defendant failed to provide for any peer review analysis of Plaintiff's teaching abilities against which to analyze the student evaluations, the sole criteria used to critique the Plaintiff's teaching ability, constituted a de facto endorsement of race and gender biases.

32. Defendant's Rules and Procedures for Faculty Appointments, Renewals, Promotion, and Tenure in the College of Arts and Science provides that in determining whether a candidate has satisfied the standard of effectiveness in teaching, one must look at "evaluations of teaching by members of the department and by graduate and undergraduate students . . .." The Faculty Bylaws of Owen provide:

> 4. e. Student evaluations of teaching, to be supplied by the Dean's office, and direct observation of the candidate's teaching by committee members, who should each attend at least one of the candidate's classes. The committee may choose to collect other information on teaching, such as statements from other faculty members.

The Defendant discriminated against Plaintiff by failing to document any evaluations of Plaintiff's teaching by faculty members.

33. The conduct of the Defendant described in this Complaint through its Owen school and its Dean in connection with Plaintiff's application for tenure constituted a continuous course of discrimination against Plaintiff based on her sex and based upon her race. Defendant failed to take any action to stop or discourage the conduct constituting discrimination based on sex and race.

34. The conduct described in this Complaint on the part of Defendant constituted discrimination against Plaintiff based on her sex and race in violation of Title VII of the Civil

f:\clients\jenkins, nicole\pleadings\jenkins\complaint.doc
4/10/2012 10:05 AM
Case 3:12-cv-00369 Document 1 Filed 04/10/12 Page 10 of 13 PageID #: 10

Rights Act of 1964 42 U.S.C. §2000e et seq. and 42 U.S.C. §2000e-2 as well as the Civil Rights Act of 1991, 42 U.S.C. §1981a *et seq*.

35. As a direct and proximate result of the unlawful discriminatory acts by Defendant, Plaintiff has suffered injury and been damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendant in the amount of $500,000.00 in actual and compensatory damages and $250,000.00 in punitive damages. Plaintiff also requests judgment for costs incurred in this action including a reasonable attorneys' fee and expert witness fees. Plaintiff requests that this Court enjoin Defendant from any further conduct constituting discrimination based on sex or race. In addition, Plaintiff requests such other and further relief as this Court may determine is just and proper.

## SECOND CLAIM FOR RELIEF - THE TENNESSEE HUMAN RIGHTS ACT

36. Plaintiff here re-alleges Paragraphs 1 through 35 of this Complaint as though said paragraphs were set forth herein in full detail.

37. The conduct of Defendant alleged herein violates the Tennessee Human Rights Act, T.C.A. §4-21-101 *et seq*.

38. As a direct and proximate result of Defendant's violation of T.C.A. §4-21-101 *et seq*. as described in this Complaint, Plaintiff has been injured and has suffered damage.

**WHEREFORE**, Plaintiff demands judgment against Defendant in the amount of $500,000.00 in actual and compensatory damages. Plaintiff also requests judgment for costs incurred in this action including reasonable attorneys' fee and expert witness fees. Plaintiff requests that this Court enjoin Defendant from any further conduct constituting discrimination on the basis

f:\clients\jenkins, nicole\pleadings\jenkins\complaint.doc
4/10/2012 10:05 AM
Case 3:12-cv-00369 Document 1 Filed 04/10/12 Page 11 of 13 PageID #: 11

of sex or race. Plaintiff requests such other and further relief as this Court may determine is just and proper.

### THIRD CLAIM FOR RELIEF - BREACH OF CONTRACT, COVENANT OF GOOD FAITH AND FAIR DEALING

39. Plaintiff hereby re-alleges Paragraphs 1 through 38 of this Complaint as though said paragraphs were set forth herein in full detail. This claim seeks compensatory damages for breach of contract and for violation by Defendant of its covenant of good faith and fair dealing.

40. This Court has jurisdiction over this claim pursuant to its supplemental jurisdiction in accordance with the provisions of 28 U.S.C. §1367.

41. From 2007 to the time of the filing of this Complaint there has existed a contract of employment between Plaintiff and Defendant pursuant to which Defendant undertook certain obligations to Plaintiff to conduct itself in accordance with policies and procedures contained in Defendant's Faculty Manual. In addition, the Defendant University undertook an obligation of good faith and fair dealing to Plaintiff.

42. The conduct of Defendant described in this Complaint constituted a breach of the contract between Plaintiff and Defendant and also constituted a breach of Defendant's obligation of good faith and fair dealing toward Plaintiff.

43. As a direct and proximate result of Defendant's breach of the contract between Plaintiff and Defendant and Defendant's breach of its obligation of good faith and fair dealing toward Plaintiff as described in this Complaint, Plaintiff has been injured and has suffered damage.

**WHEREFORE**, Plaintiff demands judgment against Defendant in the amount of Five Hundred Thousand Dollars ($500,000.00) in actual and compensatory damages. Plaintiff also requests judgment for costs incurred in this action. Plaintiff requests that this Court enjoin

<_>f:\clients\jenkins, nicole\pleadings\jenkins\complaint.doc
4/10/2012 10:05 AM
Case 3:12-cv-00369 Document 1 Filed 04/10/12 Page 12 of 13 PageID #: 12</_>

Defendant from any further conduct constituting breach of contract. Plaintiff requests such other and further relief as this Court may determine is just and proper.

Respectfully submitted,

_____
Richard J. Braun, Bar No. 010346
Julie F. Travis, Bar No. 030059
BRAUN & ASSOCIATES PLLC
501 Union Street, Suite 500
Nashville, Tennessee 37219
Telephone: (615) 259-1550
Facsimile: (615) 259-2524
Email: rbraun@braunlawassociates.com
jtravis@braunlawassociates.com

Attorneys for Plaintiff, Nicole Jenkins.

f:\clients\jenkins, nicole\pleadings\jenkins\complaint.doc
4/10/2012 10:05 AM

Case 3:12-cv-00369   Document 1   Filed 04/10/12   Page 13 of 13 PageID #: 13